NORTHERN STATES POWER CO. v. SECURITIES AND EXCHANGE COMMISSION.

Nos. 9323, 9384.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 24, 1947.

Decided Dec. 1, 1947.

---

4 Humble Oil & Refining Co. v. Bell, Tex.Civ.App., 180 S.W.2d 970.

A. Louis Flynn, of Chicago, Ill., (Cyrus Erickson and A. William Groth, both of Minneapolis, Minn., on the brief), for Northern States Power Co.

Nathaniel Whitehorn, of New York City (Hays, Wolf, Schwabacher, Sklar & Epstein and Simpson Thacher & Bartlett, all of New York City, on the brief) for Lehman Corporation, Lehman Bros. and Overseas Securities Co., Inc.

Sidney H. Willner, of Philadelphia, Pa. (Roger S. Foster, Sol., David Ferber, and Myron S. Isaacs, Sp. Counsel, and Myer Feldman, all of Philadelphia, Pa., on the brief), for Securities and Exchange Commission.

Before GOODRICH and McLAUGHLIN, Circuit Judges and RODNEY, District Judge.

GOODRICH, Circuit Judge.

The Court has before it two petitions by Northern States Power Company, a Delaware corporation, referred to hereafter as the Delaware Company. They are brought under § 24(a)[1] of the Public Utility Holding Company Act[2] to modify two orders of

---

[1] "Any person * * * aggrieved by an order issued by the Commission under this title may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides * * * by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * * Such court shall have exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part * * *." 49 Stat. 834, Act Aug. 26, 1935, 15 U.S.C.A. § 79x(a).

Section 11(b) (2), the section under which the order complained of was issued, provides: "Any order made under this subsection shall be subject to judicial review as provided in section 24." 49 Stat. 821, Act Aug. 26, 1935, 15 U.S.C.A. § 79k(b) (2).

[2] 49 Stat. 803, Act Aug. 26, 1935, 15 U.S.C.A. §§ 79a–79z—6.

the Commission. Since the two petitions raise the same legal point they were briefed together in this Court.[3] In brief, what is sought by the petitioner is that the Court modify the order in which the Commission (1) directs that the existence of the Delaware Company be terminated and (2) orders further proceedings pursuant to § 11 (b) (2)[4] of the Public Utility Holding Company Act. The theory upon which these petitions for modification are based will be discussed below. But, first, a summary of prior steps with regard to the Delaware Company and its related corporations is necessary.

The Delaware Company, a holding company pure and simple, owns all the shares of the Northern States Power Company, a Minnesota corporation, which will be referred to as the Minnesota Company hereafter. The Minnesota Company is an operating public utility company which, however, also owns shares in other companies which are themselves holding companies. The nature and extent of that ownership is not relevant here. The Delaware Company was organized to hold the stock of the Minnesota Company because Minnesota law, at the time, imposed a liability on shareholders in corporations which, it was thought, would interfere with the marketing of the securities of the Minnesota Company. Subsequently, the Minnesota law was changed and the reason for the Delaware Company's existence terminated with that change. This statement of fact is not a matter of dispute between the parties and it is conceded by all the participants in this litigation that the Delaware Company's life must come to an end. So far as it is concerned, the question here involved is not "what" but "how."

The Delaware Company, on June 3, 1942, inaugurated voluntary proceedings for its termination by filing a plan for liquidation and dissolution under § 11(e)[5] of the Public Utility Holding Company Act. Two days later, June 5, 1942, the Commission

---

[3] The case, at our No. 9323, is for the modification of the Commission's order of November 8, 1946. The portion complained of is as follows:

"It is further ordered pursuant to Section 11(b) (2) of the Act that the continued existence of Northern States Power Company (Delaware) shall be terminated;

"It is further ordered that Northern States Power Company (Delaware) shall proceed with due diligence to submit to this Commission a plan or plans for the prompt liquidation and dissolution of Northern States Power Company (Delaware) and the termination of its existence in a matter consistent with the provisions of the said Act;" Northern States Power Co., 1946, —— S.E.C. ——, Holding Company Act Release No. 6980.

The second is an order of the Commission of January 29, 1947, denying modification of the order of November 8, 1946. Northern States Power Co., 1947, —— S.E.C. ——, Holding Company Act Release No. 7148.

[4] 49 Stat. 820, Act Aug. 26, 1935, 15 U.S.C.A. § 79k(b) (2).

[5] "In accordance with such rules and regulations or order as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers, any registered holding company or any subsidiary company of a registered holding company may, at any time after January 1, 1936, submit a plan to the Commission for the divestment of control, securities, or other assets, or for other action by such company or any subsidiary company thereof for the purpose of enabling such company or any subsidiary company thereof to comply with the provisions of subsection (b). If, after notice and opportunity for hearing, the Commission shall find such plan, as submitted or as modified, necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan, the Commission shall make an order approving such plan; and the Commission, at the request of the company, may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan. If, upon any such application, the court, after notice and opportunity for hearing, shall approve such plan as fair and equitable and as appropriate to effectuate the provisions of section 11, the court as a court of equity may, to such extent as it deems necessary for the purpose of carrying out the terms and provisions of such plan, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located * * *." 49 Stat. 822, Act Aug. 26, 1935, 15 U.S.C.A. § 79k(e).

started proceedings under § 11 (b) (2)[6] and two other Sections not relevant here. The § 11 (b) (2) proceedings and the § 11 (e) proceedings were consolidated by Commission order.

Hearings were had and the plan submitted by the Delaware Company, as amended pursuant to Commission recommendations, met with an order approving the plan by the Commission dated October 31, 1945.[7] This plan was taken to the District Court of the United States for the District of Minnesota on the Commission's application pursuant to § 11 (e) for judicial enforcement. Certain objections developed. The post-war situation had made definite that which had been a subject of prophecy while the war was on and the financial situation both as to earnings and taxes had changed during the three year period between the filing of the plan and the enforcement proceeding. The Commission, therefore, vacated its order of approval and the matter was reopened for further hearings which were duly had.

On November 6, 1946, the Delaware Company filed with the Commission what is called its second amended plan for liquidation and dissolution under § 11 (e) of the Act. On November 8, 1946, the Commission entered the first order complained of under § 11 (b) (2), one of the terms of which ordered the termination of the existence of the Delaware Company and the filing by it of a plan for its liquidation.[8] This portion of the order was opposed by the Delaware Company before the Commission and upon its defeat before that body it raises the question of the legality of the Commission's action in this Court.

The above recital of facts shows that the question before this Court is a very narrow one. No one is seeking to prolong the life of the doomed Delaware corporation. Nor has this Court before it the merits of a plan for distributing its effects after its corporate death. The sole question is whether exhaustion of the § 11 (e) proceedings is a condition precedent to a commencement of proceedings under § 11 (b) (2).

Delaware Company's contention is that it has been acting in good faith and that it is entitled, both according to the statute and court decisions thereunder, to have the proceedings for liquidation and dissolution carried on through consideration of its voluntary proceedings under § 11(e). It says that the procedure under § 11 (b) (2) is much more risky to it than the vol-

---

[6] "(b) It shall be the duty of the Commission, as soon as practicable after January 1, 1938:
\* \* \* \* \* \* \* \*
"(2) To require by order, after notice and opportunity for hearing \* \* \* each registered holding company \* \* \* to take such action as the Commission shall find necessary in order that such holding company shall cease to be a holding company with respect to each of its subsidiary companies which itself has a subsidiary company which is a holding company \* \* \*." 49 Stat. 820, Act Aug. 26, 1935, 15 U.S.C.A. § 79k(b) (2).
An order issued under § 11(b) (2) brings into play §§ 11(c) and 11(d) which provide:
"(c) Any order under subsection (b) shall be complied with within one year from the date of such order; but the Commission shall, upon a showing \* \* \* that the applicant has been or will be unable in the exercise of due diligence to comply with such order within such time, extends such time for an additional period not exceeding one year if it finds such extension necessary or appropriate in the public interest or for the protection of investors or consumers.
"(d) The Commission may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce compliance with any order issued under subsection (b). In any such proceeding, the court as a court of equity may, to such extent as it deems necessary for purposes of enforcement of such order, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located. \* \* \* Such reorganization plan may be proposed in the first instance by the Commission, or, subject to such rules and regulations as the Commission may deem necessary or appropriate in the public interest or for the protection of investors, by any person having a bona fide interest \* \* \* in the reorganization." 49 Stat. 820–822, Act Aug. 26, 1935, 15 U.S.C.A. §§ 79k (b) (2) (d).
[7] Northern States Power Co., 1945, Holding Company Act Release No. 6173.
[8] Northern States Power Co., 1946, —— S.E.C. ——, Holding Company Act Release No. 6987.

untary proceedings under § 11 (e). It points out that the time in which to comply is limited to one year unless the Commission for cause shown extends the time another year.[9] It likewise points out that upon the failure to suggest a plan which the Commission will approve, it may lose control of its corporate enterprise. We think the Commission has stated the petitioner's position correctly when it says that the latter argues that §§ 11 (b)·(2) and 11 (e) provide mutually exclusive methods of compliance with the Act and that therefore proceedings under § 11 (b) (2) must be held back until voluntary efforts under § 11 (e) have been exhausted without having produced a successful plan. We add to that that we think the petitioner's position would require the Commission to hold back its § 11 (b) (2) proceedings indefinitely so long as a company submitting a plan cannot be found to have been acting in bad faith under § 11 (e).

Petitioner does not say that he has been, up to this time, hurt by the Commission's orders. The Commission has not refused to consider the second amended plan; indeed, the Court was advised that at the time the briefs were filed, the plan was soon to have a hearing.[10] We do not know whether this hearing has been held or not. The petitioner's point, therefore, comes to the proposition that he is entitled, under the law, to have his § 11 (e) plans considered without reference to § 11 (b) (2) proceedings until the efforts result in an approved plan or demonstrated failure of effort to provide one. If the law provides such rigid order of procedure, of course, petitioner is entitled to such benefit as he may derive from it.

We do not think that petitioner's legal point is well taken. Section 11(a)[11] of the statute imposes upon the Commission a duty stated in broad terms to examine holding company structures with a view to simplification, distribution of vot-

ing power, and the establishment of an integrated public utility system. In accomplishing that result it has been pointed out by this Court that the companies, themselves, have a broad area of discretion in determining how to bring their systems within the required standards. It was pointed out that orders entered under § 11 (b) are "fundamentally directions that the companies involved achieve a stated result * * *" and that "Congress intended that the Commission might leave open for later consideration the detailed means by which the result directed should be accomplished." Commonwealth & Southern Corporation v. Securities and Exchange Commission, 3 Cir., 1943, 134 F.2d 747, 751. That is just what the Commission did here when it ordered the Delaware Company to "proceed with due diligence to submit to this Commission a plan or plans for prompt liquidation and dissolution of Northern States Power Company (Delaware) * * *." That simply constituted an opportunity for the Company to submit a plan or plans and there is no compulsion, at this stage of the proceedings, for the Delaware Company to accept any plan devised by the Commission or anyone else.

Both sides have cited to us the Supreme Court decision in American Power & Light Co. v. Securities & Exchange Commission, 1946, 329 U.S. 90, 67 S.Ct. 133. This decision was also considered by the Commission when it made the orders appealed from. We do not find in the Court's opinion aid and comfort for the position taken by the petitioner. The Supreme Court pointed out that the filing of plans under § 11 (e) did not oust the Commission of jurisdiction to enter its orders under § 11 (b) (2). It said, further, "It does not necessarily give such plans the effect of staying proceedings under § 11 (b) (2) where such proceedings are initiated prior to the filing of the plans." 329 U.S. page 119, 67 S·Ct. page 149.

---

[9] The Commission has announced, however, that it may defer applying for enforcement of an involuntary plan even after the extension period has expired if it appears that the company has been diligent. Central and Southwest Utilities Co., 1942, 11 S.E.C. 533, 565; North American Co., 1942, 11 S.E.C. 194, 258.

[10] In the November 8th opinion the Commission stated that it would set an early date for hearings on the second amended plan. See Northern States Power Co., 1946, —— S.E.C. ——, Holding Company Act Release No. 6987.

[11] 49 Stat. 820, Act Aug. 26, 1935, 15 U.S.C.A. § 79k(a).

■ The quoted language has been the subject of controversy in the argument before us. It is appropriate to point out that the immediate subject of the litigation in the American Power case was a dissolution order under § 11 (b) (2). That necessarily was the focal point of arguments of counsel and consideration by the Court. The Court further stated, "We assume that the Commission will give due consideration to any plans that are filed under § 11 (e) before it enters a § 11 (b) (2) order." That assumption is also applicable here. We assume that, of course, the Commission will consider the merits of the new § 11 (e) plan before it substitutes its own idea for that of the Company.[12] We think, furthermore, it is an intelligent proposition to mold the procedure in such way that plans submitted by persons who are entitled to be heard can be considered on their merits. This the orders complained of make possible. Plans of others than the Company involved in dissolution may be considered, under the Commission's practice, under § 11 (b) (2) proceedings. Until that order issues only Company plans are considered, although counter suggestions of others interested may be heard when they are relevant to the consideration of a § 11 (e) plan. If the matter is one of discretion, therefore, the procedure adopted by the Commission commends itself to the judgment of good sense.

■■ We think the only way that petitioner's point can prevail is to hold that the statute precludes § 11 (b) (2) proceedings so long as anything under § 11 (e) is pending. We find no warrant in the language of the statute nor the decisions applying it which lead us to that conclusion. The exclusiveness of proceedings under § 11 (e) existed only until January 1, 1938; there is no other provision in § 11 (b) (2) which prevents the use of that section after the date previously mentioned. We should be reluctant to reach any other conclusion for it would establish an unfortunate restriction on the procedure of a body whose procedure should remain elastic so far as it does not violate due process of law.

An order will be entered affirming the orders of the Securities and Exchange Commission.

[12] In the event the Delaware Company's second amended plan will accomplish the result required by the Commission, it is empowered by § 11(b) (2) to "revoke or modify any order previously made under this subsection, if, after notice and opportunity for hearing, it finds that the conditions upon which the order was predicated do not exist." American Power & Light Co. v. Securities & Exchange Commission, 1 Cir., 1944, 141 F.2d 606, 614, affirmed in 1946, 329 U. S. 90, 67 S.Ct. 133.